IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

LBS INNOVATIONS LLC,                    §
                                        §
            Plaintiff,                  §
                                        §
v.                                      §        Civil Action No. 2:11-CV-407-DF
                                        §
BP AMERICA, INC., et al.                §
                                        §
            Defendants.                 §


### DEFENDANT GIANT EAGLE, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, JOINDER IN CO-DEFENDANTS' PENDING MOTIONS TO DISMISS AND BRIEF IN SUPPORT

Orrin L. Harrison, III
Patrick G. O'Brien
AKIN GUMP STRAUSS HAUER & FELD, LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4624
(214) 969-2800
(214) 969-4343 – Facsimile

Bernard D. Marcus
Scott D. Livingston
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA  15219
(412) 471-3490
(412) 391-8758 - Facsimile

Counsel for Defendant,
Giant Eagle, Inc.

# TABLE OF CONTENTS

I.    Factual Background .................................................................................... 1

    A.  Giant Eagle's Website Store Locator Has No Connection To Texas ........................... 1

    B.  Giant Eagle Is A Regional Grocery Store Chain Located Far From Texas ................. 2

    C.  Giant Eagle's Website Is Aimed At Customers  Located In Its Geographical Market  2

    D.  Giant Eagle's Website Requires Any Litigation Arising  Out Of Its Use To Be Brought In Pennsylvania ................................................................ 5

II.   The Due Process Clause Does Not Permit The Exercise Of Jurisdiction Over Giant Eagle In Texas ................................................................................ 5

    A.  No Basis Exists For General Jurisdiction Over Giant Eagle In Texas ........................ 7

    B.  No Basis Exists For Specific Jurisdiction Over Giant Eagle In Texas ........................ 9

        1.  Giant Eagle's Alleged Infringement Did Not Occur In Texas ........................... 10

        2.  The Alleged Infringing Conduct Does Not In Any Way Relate To Giant Eagle's De Minimus Texas Contacts ................................................ 10

        3.  Giant Eagle's Website Lacks The Substantial Interactivity Needed  To Meet The Purposeful Availment Test For Specific Jurisdiction ........................... 11

        4.  Giant Eagle's Forum Selection/Choice Of Law Clause  Confirms That It Has Not Purposefully Availed Itself  Of The Protection And Benefits Of Texas Law ...... 15

III.  Giant Eagle Joins In Co-Defendants' Pending Motions To Dismiss ............................... 16

IV.   Conclusion ............................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Access Telecomm. Inc. v. MCI Telecomms. Corp.*,
   197 F.3d 694 (5th Cir. 1999) ...................................................................7

*Action Tapes Inc. v. Ebert*,
   2006 WL 305769 (N.D. Tex. Feb. 9, 2006)............................................14

*Alliantgroup L.P. v. Feingold*,
   2009 WL 2498551 (S.D. Tex. Aug. 12, 2009) .........................................9

*Alpine View Co. v. Atlas Copco AB*,
   205 F.3d 208 (5th Cir. 2000) ...............................................................5, 8

*Asarco Inc. v. Glenara Ltd.*,
   912 F.2d 784 (5th Cir. 1990) ...................................................................7

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F 3d 1324,1332 (Fed. Cir. 2008).......................................................9

*Beuticontrol Inc. v. Burditt*,
   2001 WL 1149360 (N.D. Tex. Sept. 26, 2001)..................................9, 10

*Beverly Hills Fan Co. v. Royal Sovereing Corp.*,
   21 F. 3d 1558 (Fed. Cir. 1994)................................................................6

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).................................................................................9

*Campbell Pet Co. v. Miale*,
   542 F.3d 879 (Fed. Cir. 2008)................................................................8

*CD Solutions, Inc. v. Tooker*,
   965 F. Supp. 17 (N.D. Tex. 1997) ........................................................11

*Chemguard Inc. v. Dynax Corp.*,
   2010 WL 363481 (N.D. Tex. Feb. 2, 2010).............................................6

*Clemens v. McNamee*,
   615 F. 3d 374 (5th Cir. 2010) .................................................................5

*Contech Bridge Solutions, Inc. v. Keaffaber*,
   2011 WL 5037210 (S.D. Ohio Oct. 24, 2011).......................................16

*Gas Turbines Inc. v. Donaldson Co.*,
  9 F.3d 415 (5th Cir. 1993) ........................................................................6

*Glazier Group, Inc. v. Mandalay Corp.*,
  2007 WL 2021762 (S.D. Tex. July 11, 2007) ...........................................7

*Goodyear Dunlop Tire Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011) ..............................................................................9

*Ham v. LaCienega Music Co.*,
  4 F.3d 413 (5th Cir. 1993) ......................................................................10

*Hanson Pipe & Products Inc. v. Bridge Techs., LLC*,
  351 F. Supp. 2d 603 (E.D. Tex. 2004) ....................................................10

*Healthcare Proprietors Agency Inc. v. Tax Credit Processing Center LLC*,
  2012 WL 174644 (E.D. La. Jan. 20, 2012) ..............................................15

*House v. 22 Tex. Servs. Inc.*,
  60 F. Supp. 2d (S.D. Tex. 1999) ............................................................6, 9

*Instabook Corp. v. Instantpublisher.com*,
  469 F. Supp. 2d 1120 (M.D. Fla. 2006) .............................................13, 15

*Irvin v. Southern Snow Mfg., Inc.*,
  2011 WL 4833047 (S.D. Miss. Oct. 12, 2011) ..........................................7

*J. McIntyre Mach. Ltd. v. Nicastro*,
  131 S. Ct. 2780 (2011) ..........................................................................5, 16

*Jackson v. Tanfuglio Giuseppe S.R.L.*,
  615 F.3d 579 (5th Cir. 2010) .................................................................7, 9

*Johnston v. Multidata Sys. Int'l Corp.*,
  523 F.3d 602 (5th Cir. 2008) .................................................................6, 7

*Jones v. Petty-Ray Geophysical, Geosource Inc.*,
  954 F.2d 1061 (5th Cir. 1992) .................................................................15

*M3 Girl Designs LLC v. Purple Mountain Sweets*,
  2010 WL 3699983 (N.D. Texas Sept. 13, 2010) ...........................9, 11, 12

*Mgmt. Insights Inc. v. CIC Enters. Inc.*,
  194 F. Supp. 2d 520 (N.D. Tex. 2001) ......................................................7

*Millennium Enters., Inc. v. Millennium Music LP*,
  33 F. Supp. 2d 907 (D. Ore. 1999) ..........................................................14

*Mink v. AAAA Development LLC*,
190 F.3d 333 (5th Cir. 1999) ......................................................................11, 12

*Moncrief Oil Intn'l Inc. v. OAO Gasprem*,
481 F.3d 309 (5th Cir. 2007) ..............................................................................15

*Mothers Against Drunk Driving v. Dammadd, Inc.*,
2003 WL 292162 (N.D. Tex. Feb. 7, 2003).................................................12, 15

*Original Creations, Inc. v. Ready Am. Inc.*,
2011 WL 4738268 (N.D. Il. Oct. 5, 2011)...........................................................9

*People Solutions Inc. v. People Solutions Inc.*,
2000 WL 1030619 (N.D. Tex. July 25, 2000) .................................................12, 13

*Stuart v. Spademan*,
772 F.2d 1185 (5th Cir. 1985) .............................................................................5

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) ....................................................................5, 8, 13

*Seiferth v. Helicopteros Aterneros Inc.*,
472 F.3d 266 (5th Cir. 2006) ..............................................................................6

*Shamsuddin v. Vitamin Research Products*,
346 F. Supp. 2d 804 (D. Md. 2004).........................................................13, 14, 15

*Trintec Industries, Inc. v. Pedra Promotional Products, Inc.*,
395 F.3d 1275 (Fed. Cir. 2005).............................................................................13

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997).................................................................11, 12

**FEDERAL STATUTES**

35 U.S.C. § 299....................................................................................................16

**RULES**

Fed. R. Civ. P. 12.................................................................................................16

Fed. R. Civ. P. 21.................................................................................................16

**DEFENDANT GIANT EAGLE, INC.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND JOINDER IN
CO-DEFENDANTS' PENDING MOTIONS TO DISMISS AND BRIEF IN SUPPORT**

Plaintiff LBS Innovations LLC ("LBS") filed this action for patent infringement on September 14, 2011 against a number of alleged infringers. Defendant Giant Eagle, Inc. ("Giant Eagle") was not included among these alleged infringers. LBS recently amended its complaint, however, to add more defendants—including Giant Eagle—as alleged infringers of U.S. Patent No. 6,901,956 (the "'956 patent").

LBS has sued Giant Eagle in the wrong jurisdiction. Giant Eagle is a bricks and mortar regional grocery store chain headquartered in Pennsylvania that conducts no business in Texas. It thus lacks the "minimum contacts" needed for the exercise of personal jurisdiction over it in Texas—a forum a thousand miles away from its place of residency and business operations. Due process precludes LBS from forcing Giant Eagle to defend itself in Texas and, accordingly, its claim against Giant Eagle should be dismissed for lack of personal jurisdiction.

## I. FACTUAL BACKGROUND

LBS claims ownership of the '956 Patent by assignment. Amend. Comp. ¶ 27. According to its abstract, the '956 Patent is

> [a] wireless system for providing services and time-critical information about places and events to mobile computers and their users proximate to their current locations or potential distributions ....

Ex. A. to Amend. Comp. Though a New Jersey limited liability company located in New Jersey, LBS brought this patent infringement action before this court in Texas for unknown reasons.

### A. Giant Eagle's Website Store Locator Has No Connection To Texas

LBS' allegations against Giant Eagle are cryptic. It alleges that Giant Eagle infringed the '956 Patent by using a website "which has a store or dealer location interface at

http://www.gianteagle.com/storelactor/default.aspx." *Id*. at ¶ 39.  No other act of patent infringement is alleged against Giant Eagle. The drop down menu for Giant Eagle's store locator interface on its website lists both its corporate owned and independently operated grocery stores but they are, of course, all located in Pennsylvania, Ohio, West Virginia, and Maryland. Affidavit of Deborah L. Robinson ¶4 (attached as Exhibit A).  The store locator interface also identifies the locations of Giant Eagle's fuel stations and convenience stores which operate in the same geographic region as its grocery stores.  *Id*.  Nothing involving the store locator interface on Giant Eagle's website relates to Texas.  *Id*.

      **B.**        **<u>Giant Eagle Is A Regional Grocery Store Chain Located Far From Texas</u>**

      Like LBS, Giant Eagle has no ties to Texas. Giant Eagle is incorporated in Pennsylvania, with its principal place of business located in Pittsburgh a thousand miles away from Texas. First Amend. Comp. ¶13. Giant Eagle operates a large number of grocery stores throughout Pennsylvania, Ohio, West Virginia and Maryland. Exhibit A, at ¶2. Giant Eagle also operates fuel stations in these markets under the trade name "GetGo." *Id*.  Giant Eagle owns no real property in Texas; indeed, it has no physical presence at all in Texas. *Id*.  Giant Eagle does not advertise or conduct business in Texas and, not surprisingly, it is not registered to do business there.  *Id*.  Only one of Giant Eagle's more than 35,000 employees resides in Texas where, through telecommuting, she works on human resources projects on a part-time basis for employees located outside Texas. *Id*. at ¶3.

      **C.**      **Giant Eagle's Website Is Aimed At Customers**
                  **<u>Located In Its Geographical Market</u>**

      Giant Eagle's website is located at <u>www.gianteagle.com</u>.  *See* Giant Eagle's Website pages (attached at Exhibit B). Giant Eagle's website is not a virtual store. Exhibit A, at ¶5. Under the heading "Online Ordering FAQ," Giant Eagle's website notifies customers that

"online ordering and delivery is not available" except for its "Special Order Service" and gift cards. *Id.* As a result, Giant Eagle's customers cannot use its website to order groceries online for home delivery.[1]

While Giant Eagle's website includes a "Special Order Service," that service only permits customers to order specialty "hard-to-find" items online. For special item orders, Giant Eagle's website redirects customers to the KeHe Eye Level LLC website ("KeHe") pursuant to an online order agreement with Eye Level Solutions Inc. ("ELS"). *Id.* at ¶8. All specialty item orders are placed through KeHe's website with payment made directly to ELS. Giant Eagle only receives a payment from ELS for each sale. *Id.* Revenue from specialty items, in any event, represents less than .00000075 percent of Giant Eagle's annual revenue from all sales. *Id.* at ¶9. Only three specialty online orders had a billed to or shipped to Texas address, for a total value of $93.65. *Id.*

Giant Eagle's website also permits customers to order prescription contact lenses online. For online contact lenses orders, however, Giant Eagle relies on a third party vendor, Arlington Contact Lens Service, Inc. ("AC Lens"), pursuant to an Internet Order Processing and Fulfillment Agreement ("Internet Order Agreement"). *Id.* at ¶11. All online contact lens orders are made through AC Lens' website. *Id.* Under the Internet Order Agreement, Giant Eagle never takes title to the contact lenses. *Id.* Title passes, rather, directly from AC Lens to the customer. *Id.* For this reason, AC Lens is the retailer of record for the purposes of sales tax collection. *Id.* at 11.

---

[1] Just last week, Giant Eagle began testing online ordering for pick-up at its stores in the near future. Exhibit A, at ¶6. This test is being conducted at a single store and, if successful, it may be expanded to other Giant Eagle stores. *Id.* Even if implemented chain-wide, however, this service will permit only in-store pick-up—nothing will be mailed or otherwise delivered to the customer. *Id.*

After AC Lens receives payment, it mails the lenses to the customer without any further involvement from Giant Eagle who receives a small payment from AC Lens for each contact lens order. *Id.* at ¶10-12. Last year only two contact lens online orders involved bill to or ship to addresses in Texas out of a total of 5,464 orders. *Id.* at ¶14. In other words, only .036 percent of Giant Eagle's online contact lens orders with a total value of only $65.80 had a Texas connection in 2011. *Id.* From a dollar standpoint, these sales were only an infinitesimal percentage of Giant Eagle's total annual revenues of nearly $10 billion.

Giant Eagle's website permits customers to order gift cards for Giant Eagle and other retailers. *Id.* at ¶15. In 2011, Giant Eagle sold less than $40,000 in gift cards where the transaction involved either or both a bill to or ship to Texas address. *Id.* at ¶16. Thus, for last year, Giant Eagle gift card sales with a Texas connection represented a miniscule percentage of .0000039 percent of Giant Eagle's total annual sales approaching $10 billion. *Id.*

Even when viewed collectively, Giant Eagle's online sales that have a Texas connection—including those made through third parties—represent an immeasurably small percentage of its total annual sales. That only a few online sales have any Texas connection is hardly surprising given that—

(1) Giant Eagle is a regional grocery store chain located 1,000 miles from Texas;

(2) Giant Eagle has no physical presence in Texas;

(3) Giant Eagle's website is designed for use principally by its store and fuel station customers located within its geographic market; and

(4) Giant Eagle's website does not include any Texas-specific advertising or marketing of any kind.

Not only are Giant Eagle's online sales involving Texas infinitesimal, but nearly all of these sales are made through third party vendors and their websites—not Giant Eagle.

### D.    Giant Eagle's Website Requires Any Litigation Arising Out Of Its Use To Be Brought In Pennsylvania

In addition, under the "terms and conditions" for its website, Giant Eagle includes a governing law and forum selection clause:

### Jurisdiction

> When you use these sites, you're agreeing that your use shall be governed by … the laws of the Commonwealth of Pennsylvania …. Disputes arising based on this website shall be exclusively subject to the jurisdiction of the Federal Courts of the United States of America and/or the State Courts of Pennsylvania.

Exhibit B. As this language makes clear, Giant Eagle expects to be sued, if at all, only in Pennsylvania for claims relating to its website.

## II.    THE DUE PROCESS CLAUSE DOES NOT PERMIT THE EXERCISE OF JURISDICTION OVER GIANT EAGLE IN TEXAS

"The plaintiff bears the burden of establishing personal jurisdiction over a non-resident" and must first make "a *prima facie* showing." *Clemens v. McNamee*, 615 F. 3d 374, 378 (5th Cir. 2010). To decide a motion to dismiss for lack of personal jurisdiction, "a district court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Revell*, 317 F.3d at 469 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). When reviewing the evidence relating to personal jurisdiction, a "court must accept the plaintiff's 'uncontroverted allegations, and resolve in [his] favor all facts contained in the parties' affidavits and other documentation.'" *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).

It goes almost without saying that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J.*

*McIntyre Mach. Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality). With this in mind, in federal court, personal jurisdiction over a nonresident defendant requires a court to find that:

(1) the defendant to be amenable to service of process under the forum state's long-arm statute; and

(2) the exercise of personal jurisdiction over the defendant to be consistent with due process.

*House v. 22 Tex. Servs. Inc.*, 60 F. Supp. 2d, 602, 607-08 (S.D. Tex. 1999); *accord Gas Turbines Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). A separate jurisdictional analysis under the long-arm statute is not required here, however, because the Texas statute "has been interpreted to reach as far as the United States Constitution permits" and, as such, "the jurisdictional inquiry ... collapses into a single due-process inquiry." *House*, 60 F. Supp. 2d at 608.

Federal Circuit law determines "whether federal due process permits the exercise of jurisdiction over an out-of-state infringer." *Chemguard Inc. v. Dynax Corp.,* 2010 WL 363481, at *2 (N.D. Tex. Feb. 2, 2010). For such jurisdiction, the plaintiff must establish:

> (1) that the non-resident has purposeful minimum contacts with the forum state sufficient to constitute 'fair warning that a particular activity may subject [him] to litigation within the forum,' and (2) that 'the maintenance of that suit does not offend traditional notions of fair play and substantial justice.'

*Id*. (quoting *Beverly Hills Fan Co. v. Royal Sovereing Corp.*, 21 F. 3d 1558, 1505 (Fed. Cir. 1994)). Either general or specific jurisdiction can satisfy the "'minimum contacts' aspect of due process," *House*, 60 F. Supp. 2d at 608, but for either jurisdictional basis the "constitutional touchstone [remains] whether the defendant purposefully established minimum contacts in the forum state." *Seiferth v. Helicopteros Aterneros Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

For this jurisdictional inquiry, a court can only consider "'contacts of the defendant ... up to the date the suit was filed.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th

Cir. 2008) (quoting *Access Telecomm. Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)).  Only pre-complaint contacts with the forum state are relevant whether the inquiry involves general jurisdiction, *Asarco Inc. v. Glenara Ltd.*, 912 F.2d 784, 787 n. 1 (5th Cir. 1990), or specific jurisdiction, *Glazier Group, Inc. v. Mandalay Corp.*, 2007 WL 2021762, at *8 (S.D. Tex. July 11, 2007); *Mgmt. Insights Inc. v. CIC Enters. Inc.*, 194 F. Supp. 2d 520, 525 (N.D. Tex. 2001).  LBS filed its amended complaint against Giant Eagle and others on January 12, 2012 and, as a result, only Giant Eagle's contacts with Texas prior to that date are relevant to the jurisdictional inquiry.[2]

### A. No Basis Exists For General Jurisdiction Over Giant Eagle In Texas

"General jurisdiction [exists] when the defendant's contacts with the forum state are substantial, continuous, and systematic." *Jackson v. Tanfuglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).  "[T]he continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir. 2008).  Neither "[i]solated visits to the forum" nor "[a]dvertising and marketing through national media" suffice for general jurisdiction. *Jackson*, 615 F.3d at 584.  "For general jurisdiction to apply [to a corporation]," rather, the defendant "must have a business presence in the forum state." *Irvin v. Southern Snow Mfg., Inc.*, 2011 WL 4833047, at 5 (S.D. Miss. Oct. 12, 2011).  Notably, Plaintiff has not alleged that the Court has general jurisdiction over Giant Eagle.  But even if it had, Giant Eagle has no business presence in Texas that would permit the exercise of general jurisdiction.

---

[2] Thus, Giant Eagle's post-complaint plans to experiment with online ordering for in-store pick-up are not relevant to the jurisdictional analysis.  However, even if such post-complaint business plans were relevant, they do not constitute a contact with Texas since all orders must be picked up by the customer at a Giant Eagle store in Pennsylvania, Ohio, West Virginia, or Maryland.  Ex. A at ¶ 6.  No orders can be picked up in Texas. *Id.*

Giant Eagle has no offices in Texas. Exhibit A, at ¶2. It has no registered agent for service in Texas. *Id.* It conducts no business in Texas. *Id.* It does not advertise or derive any revenue from sales made through any stores or fuel stations in Texas. *Id.* It neither owns nor leases any real property in Texas. *Id.* It also has only one part-time telecommuting employee in Texas. *Id.* at ¶3. Put simply, Giant Eagle has no physical presence in Texas at all.

While Giant Eagle's website may have helped a few third party vendors make a minute number of sales to Texas residents, such sales, even if they could be attributed to Giant Eagle, at most constitute "doing business *with* Texas…not doing business *in* Texas." *Revell*, 317 F.3d at 471 (emphases in original); *accord Southern Snow*, 2011 WL 4833047, at *5. General jurisdiction cannot be predicated on a website that offers goods for sale where, as here, "the website is not directed at customers in [the forum state.]" *Campbell Pet Co. v. Miale,* 542 F.3d 879, 884 (Fed. Cir. 2008). To the extent Giant Eagle's website offers goods for sale, whether directly or indirectly, those offers are made to residents of all states. *See Revell*, 317 F.3d at 471 ("[M]aintenance of a website is, in a sense, a continuous presence everywhere in the world."). No advertising or solicitation of any kind on Giant Eagle's website is directed at Texas.

Though many of Giant Eagle's online sales are, in fact, made by third party sellers, even if the few isolated Texas-related sales were all attributed to Giant Eagle, "[i]njecting a product, even in significant volume, into a forum's stream of commerce, without more, does not lend support to general jurisdiction." *Southern Snow*, 2011 WL 4833047, at *5 (quotation omitted); *see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000) (rejecting "reliance on the stream-of-commerce theory to support asserting general jurisdiction over a nonresident defendant"). In any event, with sales having a Texas connection amounting to less than one thousandth of one percent of its total sales, Giant Eagle plainly lacks the "substantial,

continuous, and systematic" ties needed for general jurisdiction in Texas. *See Jackson*, 615 F.3d at 584; *see also M3 Girl Designs LLC v. Purple Mountain Sweets*, 2010 WL 3699983, at *8 (N.D. Texas Sept. 13, 2010)(single sale in forum state "falls far short of the continuous and systematic contacts" needed for general jurisdiction); *Alliantgroup L.P. v. Feingold,* 2009 WL 2498551, at *4 (S.D. Tex. Aug. 12, 2009)(no general jurisdiction over company that "does not have an office in Texas, does not have employees in Texas, and does not do business in Texas").[3]

**B.      No Basis Exists For Specific Jurisdiction Over Giant Eagle In Texas**

"In contrast to general, all-purpose jurisdiction, specific jurisdiction," according to the Supreme Court, "is confined to adjudication of 'issues deriving from ... the very controversy that establishes jurisdiction.'" *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)  (quoting MEHREN & TROUTMAN, JURISDICTION TO ADJUDICATE:  A SUGGESTED ANALYSIS, 79 Harv. L. Rev. 1121, 1136 (1966)).    Specific jurisdiction requires "that the cause of action arise[] from the defendant's actions in connection with the state." *Beuticontrol Inc. v. Burditt*, 2001 WL 1149360, at *8 (N.D. Tex. Sept. 26, 2001).  With specific jurisdiction, "minimum contacts [requires that] the nonresident defendant 'purposefully avails itself of the privilege of conducting activities within the forum state.'" *House*, 60 F. Supp. 2d at 608 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  For patent infringement, "the requirement that the claim 'arise out of' or 'relate to' a defendant's activities is "satisfied where the plaintiff [establishes] … that the defendant makes, uses, [or] sells, [the] allegedly infringing products in the forum." *Original Creations, Inc. v. Ready Am. Inc.*, 2011 WL 4738268, at *2 (N.D. Il. Oct. 5, 2011); *accord Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F

---

[3] The presence of a single part-time Giant Eagle employee in Texas whose work does not in any way involve Texas does not come close to the requisite "continuous and systematic" ties needed for general jurisdiction.

3d 1324,1332 (Fed. Cir. 2008). LBS has not alleged—and cannot allege—any basis for specific jurisdiction over Giant Eagle in Texas.

### 1. Giant Eagle's Alleged Infringement Did Not Occur In Texas

Giant Eagle's alleged infringement of LBS' patent must have occurred, if at all, where Giant Eagle does business—Pennsylvania, Ohio, West Virginia, and Maryland. Significantly, the location of the infringing acts is what matters for jurisdictional purposes. *See Hanson Pipe & Products Inc. v. Bridge Techs., LLC*, 351 F. Supp. 2d 603, 618-19 (E.D. Tex. 2004) (noting that the "court cannot stress enough" the importance of where the infringement and harm occurred for jurisdictional analysis). With no presence in Texas, Giant Eagle did not "reasonably anticipate" being haled into court there for alleged patent infringement based on acts that occurred a thousand miles away—especially given that any harm from such alleged infringement also occurred far beyond the Texas border. *See Ham v. LaCienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993) (no jurisdiction for copyright infringement where there was "no injury flowing" from defendant's contacts with forum state and infringing acts occurred elsewhere).

### 2. The Alleged Infringing Conduct Does Not In Any Way Relate To Giant Eagle's De Minimus Texas Contacts

For specific jurisdiction to attach, the litigation must arise out of the defendant's connection to the forum state. *See Beuticontrol*, 2011 WL 1149360, at *8. LBS alleges only that the store locator feature on Giant Eagle's website infringes its '956 patent. First Amend. Comp. at ¶39. LBS does not allege that any other aspect of Giant Eagle's website infringes the '956 patent, and no other contact with Texas is alleged. *Id.* This store locator function on Giant Eagle's website has nothing to do with any contact by Giant Eagle that occurred in Texas, or any activity directed at Texas. The store locator function can only direct users to Giant Eagle's stores—none of which are located in Texas. Obviously, the store locator function has nothing to

do with online sales, but rather, only with potential in-store sales to be made at a Giant Eagle grocery store or fuel station located in its geographic market far from Texas.

Here, Giant Eagle's only potential connection to Texas is a slim one—*i.e.,* a few online sales made using Giant Eagle's website (or a third party's website) that may have some marginal Texas connection. LBS' claim of infringement regarding the store locator function on Giant Eagle's website has no relationship to these minimal contacts. Thus, LBS' patent infringement claim as to Giant Eagle's store locator function cannot arise out of any of Giant Eagle's very few Texas contacts (which are limited to isolated and insubstantial online sales) and, for this reason alone, LBS cannot establish specific jurisdiction over Giant Eagle in Texas.

A trademark infringement case, *CD Solutions, Inc. v. Tooker*, 965 F. Supp. 17 (N.D. Tex. 1997) supports this result. In *CD Solutions*, the plaintiff filed a declaratory judgment action against the trademark owner in Texas seeking a declaration that the trademark was invalid. *Id.* at 19. Although the trademark owner used the mark in Texas, that was not enough for specific jurisdiction there because the

> lawsuit present[s] the primary question [of] whether [plaintiff's] use of the [mark over the internet] is improper. These claims do not arise out of or relate to [the trademark owner's] contact with the state of Texas.

*Id.* at 20. If anything, Giant Eagle's ties to Texas are even more attenuated than the trademark owners in *CD Solutions* given that Giant Eagle's alleged infringement has no relationship at all to Texas.

### 3. Giant Eagle's Website Lacks The Substantial Interactivity Needed To Meet The Purposeful Availment Test For Specific Jurisdiction

Further, Giant Eagle's website cannot support jurisdiction. To determine whether jurisdiction can be based on a website alone, as the courts in *M3Girl Designs*, 2010 WL 3699983, at *6 and *Mink v. AAAA Development LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) have

pointed out, the Fifth Circuit follows the so-called "*Zippo* sliding-scale analysis" first used in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). Under the *Zippo* approach, "[p]ersonal jurisdiction based on a 'passive website'"—*i.e.,* one that merely advertises—"is inappropriate." *M3Girl Designs*, 2010 WL 3999983, at *6 (quoting *Mink*, 190 F.3d at 336). At the other end of the spectrum, a website that acts as a virtual online store provides an adequate basis for personal jurisdiction. *See Mothers Against Drunk Driving v. Dammadd, Inc.*, 2003 WL 292162, at *5-6 (N.D. Tex. Feb. 7, 2003) (recognizing that a "'virtual store'" website permits the exercise of personal jurisdiction under *Zippo*). "Between these two extremes" are websites that allow "a visitor to exchange information with a host computer." *Id*. at 5. For websites "[i]n this middle ground, 'the exercise of jurisdiction [turns on] the level of interactivity and commercial nature of the exchange of information . . . on the [w]ebsite.'" *Mink*, 190 F.3d at 336 (*quoting Zippo*, 952 F. Supp. at 1124).

Though Giant Eagle's website may fall into this middle ground, its connections to Texas are too negligible and attenuated to meet the "'purposeful availment' requirement of the minimum contacts inquiry." *MADD*, 2003 WL 292162, at *4 (quoting *Burger King Corp. v. Rodzewicz*, 471 U.S. 462 475 (1985)). For a plaintiff to establish that, through its website, the defendant "has 'purposefully availed itself' of the benefits of the forum state and its laws," *People Solutions Inc. v. People Solutions Inc.,* 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000), the website must have "a substantial connection [with] the forum state." *MADD*, 2003 WL 292162, at *4. For good reason, the purposeful availment test cannot be met by a website whose contacts with the forum state are "'random,' 'fortuitous,' or 'attenuated.'" *Id*. (quoting *Burger King*, 471 U.S. at 475). Yet isolated connections to Texas in the Giant Eagle website plainly fall into these categories of insignificance.

Giant Eagle's website permits a customer from anywhere in the world to order gift cards, but operating "a website, even one containing allegedly infringing materials, that is accessible in the forum state is not enough to establish specific jurisdiction." *M3Girl Designs,* 2010 WL 3699983, at *7. This contact with the forum state is "not in any way substantial" even though, "in a sense," it involves a "continuous presence" there. *Revell*, 317 F.3d at 471. Untargeted website interactivity is not enough for specific jurisdiction. The website interactivity, rather, must "demonstrate[] [the defendant's] purposeful targeting of residents of the forum state." *Shamsuddin v. Vitamin Research Products*, 346 F. Supp. 2d 804, 813 (D. Md. 2004); *see also Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1125 (M.D. Fla. 2006).

But nothing in Giant Eagle's website is directed to Texas residents. The "difficulty" here, as it was in *Trintec Industries, Inc. v. Pedra Promotional Products, Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005), is that Giant Eagle's website:

> is not directed at customers in [Texas], but instead is available to all customers throughout the country who have access to the Internet. Thus, 'the ability of [Texas] residents to access the defendants' websites ... does not by itself show any persistent course of conduct by [Giant Eagle] in [Texas].

*Id*. (quoting *GTE New Media Servs. Inc. v. Bell-South Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000)). For this reason, most courts require "something additional beyond a website ... to establish personal jurisdiction." *Id.; accord People Solutions*, 2000 WL 1030619, at *4 ("Although Defendant [could] interact with, sell products to, and contract with Texas residents on its website, ... Defendant's website alone does not subject it to personal jurisdiction"). While a website, like Giant Eagle's, "which allows users to purchase products" may make "it foreseeable that residents of [Texas], or any other state or country for that matter, could purchase a product from [Giant Eagle]," that is not the test—

> it is well-established that forseeability alone cannot serve as the
> constitutional benchmark for personal jurisdiction.

*Millennium Enters., Inc. v. Millennium Music LP*, 33 F. Supp. 2d 907, 921 (D. Ore. 1999).  What

matters, rather, is whether defendant's connection "'with the forum state are such that he should

reasonably anticipate being haled into court there.'"  *Id. (*quoting *World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, 297 (1980)).

Of course, "[t]he fact that someone [from Texas] who accesses [Giant Eagle's website]

can purchase a [product] does not render [its] actions 'purposefully directed' at [Texas]."  *Id.*

Giant Eagle's website, rather, like the website in *Millennium*, reveals a purposeful intent not to

target Texas residents.  The defendant's website in *Millennium*, like here, "provide[d] a map of

the location of defendants' stores."  *Id.* at 922.  From this "invitation to visit [its] retail outlets,"

explained the *Millennium* court, one could reasonably infer that defendants[, like Giant Eagle,]

intended to target residents in [its] area"—not those far away from its retail outlets.  *Id.*

Though a high volume of internet sales in the forum state (especially if accompanied by

advertising) could suggest purposeful availment there, the paucity of internet sales by Giant

Eagle in Texas permits no such inference here.  *See Shamsuddin v. Vitamin Research Products*,

346 F. Supp. 2d 804, 816-17 (D. Md. 2004) (no personal jurisdiction over defendant that

operated interactive website allowing customers to purchase products because "the paucity of

sales to Maryland residents [and] lack of advertising targeted to Maryland" established no

purposeful availment); *Action Tapes Inc. v. Ebert*, 2006 WL 305769, at *5 (N.D. Tex. Feb. 9,

2006) (following *Shamsuddin* in finding no jurisdiction over defendant despite interactive

website that permitted purchases by forum state residents).  Not only are Giant Eagle's internet

sales in Texas undeniably negligible, they are also inadvertent because Giant Eagle does not

advertise or market its products there. Negligible internet sales cannot support specific jurisdiction.

In *MADD*, for example, the court found that specific jurisdiction could not be exercised in Texas over an out-of-state charity because: (1) Texas donations were less than two percent of all donations; and (2) only two sales were made of the charity's merchandise to Texas consumers. 2003 WL 292162, at *6. Similarly, in *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1126-27 (M.D. Fla. 2006), the court found that defendant's use of an interactive website to publish two books by Floridian residents was not enough for specific jurisdiction. Likewise, two sales to Maryland residents through defendant's website in *Shamsuddin* were *de minimus* and thus insufficient for the exercise of specific jurisdiction there. 346 F. Supp. 2d at 813, 816-17. *A fortiori*, Giant Eagle's even more negligible internet sales in Texas fall far short of the level of commercial activity in the forum state needed to support jurisdiction there.

    **4.**     **Giant Eagle's Forum Selection/Choice Of Law Clause Confirms That It Has Not Purposefully Availed Itself Of The Protection And Benefits Of Texas Law**

It is difficult, if not impossible, to conclude that a defendant has purposefully availed himself of the benefits of the laws of Texas where, as here, a forum selection/choice of law provision requires any litigation arising out of the subject agreement not only to be brought in Pennsylvania, but also to be governed by Pennsylvania law. *Jones v. Petty-Ray Geophysical, Geosource Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992) (forum selection and choice of law clauses "indicate rather forcefully" that defendant "did not purposefully direct its activities toward Texas"); accord *Moncrief Oil Intn'l Inc. v. OAO Gasprem*, 481 F.3d 309, 313 (5th Cir. 2007) (defendant did not purposely direct his activities at Texas where contract required disputes to be arbitrated in Russia pursuant to Russian law); *Healthcare Proprietors Agency Inc. v. Tax Credit*

*Processing Center LLC*, 2012 WL 174644, at *3 (E.D. La. Jan. 20, 2012) (no purposeful availment in Louisiana where Alabama law governed under choice of law provision).  Though not dispositive, a choice of law provision "is a significant factor in determining purposeful availment."  *Contech Bridge Solutions, Inc. v. Keaffaber*, 2011 WL 5037210, at *9 (S.D. Ohio Oct. 24, 2011).  By requiring any suit involving the use of Giant Eagle's website to be brought in Pennsylvania under Pennsylvania law, Giant Eagle undeniably did not purposefully direct its activities at Texas.

### III.  GIANT EAGLE JOINS IN CO-DEFENDANTS' PENDING MOTIONS TO DISMISS

Defendants Keycorp, Costco Wholesale Corporation, and McDonald's Corporation have filed a motion to dismiss for lack of subject matter jurisdiction and insufficient service of process pursuant to Rule 12(b)(1) and (5) (Dkt. #57).  Additionally, Defendants Starbucks Corporation, Target Corporation, and U.S. Bancorp have filed a motion to dismiss or sever for misjoinder pursuant to Rule 21 and 35 U.S.C. §299 (Dkt. #68 & #76).  The arguments set forth in these motions equally apply to Giant Eagle, and Giant Eagle joins these pending motions to dismiss and incorporates them herein.

### IV.  CONCLUSION

The Supreme Court's concern in *J. McIntyre* rings particularly true here:

> Due process protects [Giant Eagle's] right to be subject only to lawful authority.  At no time did [Giant Eagle] engage in any activities in [Texas] that reveal an intent to invoke or benefit from the protection of its laws.

131 S. Ct. at 2791.  Jurisdiction cannot be exercised over Giant Eagle in Texas without offending due process and, accordingly, the complaint against Giant Eagle should be dismissed for lack of jurisdiction or, in the alternative, for the reasons stated in co-defendants' pending motions to dismiss.

Dated: April 12, 2012                             Respectfully submitted,

*/s/ Orrin L. Harrison, III*
Orrin L. Harrison, III
Texas Bar No. 09130700
oharrison@akingump.com
Patrick G. O'Brien
Texas Bar No. 24046541
pobrien@akingump.com
AKIN GUMP STRAUSS HAUER & FELD, LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4624
(214) 969-2800
(214) 969-4343 – Facsimile

Bernard D. Marcus (*pro hac vice* to be filed)
Marcus@marcus-shapira.com
Scott D. Livingston (*pro hac vice* to be filed)
Livingston@marcus-shapira.com
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
(412) 471-3490
(412) 391-8758 – Facsimile

*Counsel for Defendant, Giant Eagle, Inc.*

## CERTIFICATE OF SERVICE

On April 12, 2012, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the attorneys for all parties registered under ECF who are entitled to notice.

*/s/ Patrick G. O'Brien*