IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LBS INNOVATIONS LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 2:11-CV-00407 |
| BP AMERICA INC., et al., | § § § | |
| Defendants. | § | |

**DEFENDANT GIANT EAGLE, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Unmoved by due process constraints, Plaintiff LBS Innovations LLC ("LBS") asks this Court to exercise jurisdiction over Defendant Giant Eagle, Inc. ("Giant Eagle") merely because:

(1) Some products purchased by Giant Eagle for resale—including allegedly fuel oil—may have a Texas origin;

(2) Giant Eagle made a bad investment in a Texas company—the Excentus Corporation ("Excentus");

(3) Giant Eagle includes a recipe for Texas shrimp on its website along with the many other recipes available there;

(4) Giant Eagle "likely" purchases seafood from Texas fishermen due to its "arrangement with the nonprofit Sustainable Fisheries Partnership;" and

(5) A few third party bloggers have written about and posted coupons redeemable at Giant Eagle.

None of these purported ties to Texas comes close to establishing the minimum contacts needed for the exercise of jurisdiction over Giant Eagle in the Lone Star state.

For starters, the Supreme Court has made clear that the mere purchase of goods in the forum state, "even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales De Columbia S.A. v. Hall*, 466 U.S. 408,

1

418 (1984). Of course LBS does not allege—nor can it—that its patent infringement claim is related in any way to Giant Eagle's purchase of any Texas products. Thus, due process does not permit the exercise of jurisdiction over Giant Eagle in Texas even if, as LBS suggests, Giant Eagle has purchased some Texas products.

But Giant Eagle has not, in fact, purchased any products from Texas sellers. While Giant Eagle is a member of the Sustainable Fisheries Partnership Foundation ("SFPF"), a non-profit organization located in Hawaii, that membership does not involve the purchase of any products. *See* Memorandum of Understanding between Giant Eagle and SFPF (April 17, 2011) (attached as Exhibit A).[1] Giant Eagle does not purchase oil in Texas—rather, it purchases gasoline and related fuels from Guttman Oil Company ("Guttman"), a Pennsylvania corporation located in Pennsylvania, pursuant to a contract governed by Pennsylvania law. *See* Amended and Restated Fuel Supply Agreement between Giant Eagle and Guttman (October 1, 2009) (attached as Exhibit B). Nor does Giant Eagle purchase seafood in Texas. Giant Eagle's seafood comes from wholesale distributors located outside Texas—principally Pennsylvania and Illinois. Supplemental Affidavit of Deborah L. Robinson, at ¶3 ("Supp. Aff.") (attached as Exhibit C).

LBS' reliance on Giant Eagle's investment in the Excentus corporation to establish jurisdiction is equally unavailing. Giant Eagle's purchase of Excentus shares does not subject it to jurisdiction wherever Excentus may be subject to jurisdiction. *Central States S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943-44 (7th Cir. 2000); *accord AM Eyewear, Inc. v. Peppers Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 845, 899

---

[1] Giant Eagle submits relevant portions of certain contracts and the Supplemental Affidavit of Deborah L. Robinson with its Reply Brief to address the arguments raised in LBS' Response. *See Z-Tel Commc'ns, Inc.*, 331 F. Supp. 2d 513, 519 (E.D. Tex. 2004) ("[A]ffidavits may appropriately be produced with a reply brief when they respond to new issues which have arisen during briefing." (quoting *Graning v. Sherburne County*, 172 F.3d 611, 614 n.2 (8th Cir. 1999)). Certain portions of the contracts have been redacted due to the existence of confidential information between the parties to those agreements.

(N.D. Tex. 2000) (even 100% stock ownership is not enough for jurisdiction). While Giant Eagle also entered into software and trademark licenses with Excentus, they have nothing to do with LBS' patent infringement claim in this litigation. And even if these contracts had something to do with this litigation, they do not support jurisdiction over Giant Eagle in Texas because they were principally, if not entirely, performed outside Texas. Excentus does not help LBS' cause.

Faced with a record establishing only a few jurisdictionally insignificant sales of gift cards to Texas residents in 2011, LBS speculates that earlier years might reveal a different picture. LBS' speculation is unfounded. As Ms. Robinson's supplemental affidavit confirms, Giant Eagle's sales of gift cards involving a bill or ship to address in Texas are equally miniscule for 2009 and 2010. Supp. Aff. ¶2. Accordingly, as explained more fully below, there is no question that Giant Eagle is not subject to personal jurisdiction in this Court.

## I. THE PURCHASE OF PRODUCTS THAT MAY HAVE A TEXAS ORIGIN FROM VENDORS LOCATED OUTSIDE TEXAS DOES NOT PERMIT THE EXERCISE OF JURISDICTION OVER GIANT EAGLE IN TEXAS

Hoping to create the illusion of minimum contacts with Texas, LBS speculates that:

(1) "[I]t is more than likely that Giant Eagle is conducting business with Texas corporations related to its supply of seafood as well as those that supply its seafood products." LBS Br. 6;

(2) Giant Eagle advertises in Texas by posting coupons on MyLitter.com. *Id*.;

(3) Through Guttman, Giant Eagle "receives its oil in-part from Texas." *Id*.; and

(4) Giant Eagle purchases Texas shrimp and Texas Best Organics Rice "from Texas corporations." *Id.* at 16.

But this wishful thinking, even if it were true, does not establish the minimum contacts needed for the exercise of jurisdiction over an out-of-state corporation.

Following the Supreme Court's lead in *Helicopteros*, "courts have held that the purchase of goods . . . from the forum state does not by itself provide support for minimum contacts jurisdiction." *Am. Eagle Ins. Co. v. Teague-Strebeck Motors, Inc.*, 1997 WL 452948, at *5 (N.D. Tex. Aug. 5, 1997); *accord Helicopteros*, 466 U.S. at 418; *see also Capital Indem. Corp. v. Certain Lloyds Underwriters*, 487 F. Supp. 1115, 1121 (W.D. Wis. 1980) ("One who merely purchases insurance from an insurer residing in the forum state does not, by the purchase through an intermediary, subject himself to the jurisdiction of the courts of the insurer's state."). This means that the purchase of Texas goods from a Texas seller does not "warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation" unless the claim "relate[s] to those purchase transactions." *Helicopteros*, 466 U.S. at 418; *accord Fix My PC, LLC v. N.F.N. Assocs., Inc.*, 48 F. Supp. 2d 640, 642-45 (N.D. Tex. 1999) (no jurisdiction despite defendant's purchase of parts in Texas and use of a website accessible by Texas residents). No such relationship exists here. Giant Eagle's alleged infringement—*i.e.*, its use of a store locator on its website—has nothing to do with the Texas seafood, rice, and the other products that LBS speculates Giant Eagle may have purchased from a Texas seller.

Apart from the irrelevancy of LBS' speculation regarding Giant Eagle's possible purchases of Texas products, that speculation is just plain wrong. Giant Eagle buys its shrimp from Mazzetta Seafood in Chicago and other wholesalers not located in Texas. Supp. Aff. ¶2. Giant Eagle, in other words, takes title to its shrimp far beyond the Texas border. Most of Giant Eagle's shrimp, in any event, comes from Asia and, while Giant Eagle purchases some gulf shrimp, these purchases are all made through Henry's—a Pennsylvania company. *Id*. at ¶3.[2]

---

[2] Though the origin of shrimp purchased from a non-Texas wholesaler is not relevant to the jurisdictional inquiry, even shrimp caught off the Texas coast may not be "Texas" shrimp. *See United States v. States of Louisiana, Texas, Mississippi, Alabama & Florida*, 363 U.S. 1, 64-66 (1960) (recognizing that under the Outer Continental Shelf Lands Act, the United States owns anything beyond nine nautical miles of the Texas coast).

LBS' reliance on Giant Eagle's memorandum of understanding with SFPF to establish jurisdiction is puzzling. SFPF does not sell seafood or anything else for that matter. Exhibit A. It is a nonprofit organization, rather, that promotes eco-friendly fishing. While the SFPF does not sell seafood, even if it did, it is located in Hawaii—not Texas. SFPF's relationship to Giant Eagle provides no support for hauling Giant Eagle into a Texas court for alleged patent infringement that occurred a thousand miles away in Pennsylvania.

LBS is equally misguided regarding Giant Eagle's purchases from Guttman. First of all, Guttman sells Giant Eagle gasoline and other fuels—not oil. Exhibit B. Second, Giant Eagle does not even know where Guttman gets its gasoline—presumably refineries located throughout the eastern United States where Guttman is located. But even if Guttman did purchase its gasoline in Texas, the actual origin of the gasoline does not matter for jurisdictional purposes. *Capital Indem.*, 487 F. Supp. at 1121 (jurisdiction cannot be based on purchase of product from intermediary located outside the forum state). Third, Giant Eagle takes title to the gasoline it purchases from Guttman where its fuel stations are located in Pennsylvania and neighboring states and, as such, Giant Eagle plainly does not purchase its gasoline from a Texas seller in Texas. Fourth, LBS' focus on Giant Eagle's fuel purchases rests on a mistaken premise because if the origin of the product, rather than the location of the seller, controlled the jurisdictional analysis, as LBS suggests, even the ultimate consumer in Pennsylvania who buys his fuel from Giant Eagle could be subject to jurisdiction in Texas—an absurd result.

Though "Texas Best Organic Rice" ("Texas rice") may be purchased by accessing a third party's website from Giant Eagle's website, that purchase does not constitute a jurisdictional tie to Texas. Giant Eagle does not sell this product. Instead, Giant Eagle merely gets a royalty for such purchases from a third party Eye Level Solutions, Inc. ("Eye Level"), for its use of Giant

Eagle's website. Supp. Aff. ¶5. According to its website, Eye Level is located in Illinois—not Texas—and, not surprisingly, Giant Eagle's contract with Eye Level is governed by Pennsylvania law. Assuming that Texas rice, in fact, was purchased by Eye Level in Texas—a big assumption—its Texas origin does not matter for jurisdictional purposes.

Further, LBS' wildly unsupported allegations regarding MyLitter.com do not even suggest, let alone establish, a basis for jurisdiction over Giant Eagle in Texas. LBS Br. 6. Until LBS mentioned MyLitter.com in its brief, Giant Eagle was not even aware of that site. Supp. Aff. ¶6. After some investigation, however, Giant Eagle has learned that the site is operated by Tiffany Ivanovsky—a blogger and coupon aggregator. *Id*. Giant Eagle has no relationship to MyLitter.com or Ms. Ivanovsky—nor does Giant Eagle have any control over either. *Id.* While MyLitter.com includes a link to Giant Eagle's website (and the website of many other retailers), Giant Eagle does not sponsor that link. *Id*. Giant Eagle's coupons are geo-targeted to the several states where it does business—not Texas. *Id*. at ¶7.

## II. NEITHER GIANT EAGLE'S INVESTMENT IN EXCENTUS NOR ITS GIFT CARD SALES ESTABISH GENERAL JURISDICTION OVER GIANT EAGLE IN TEXAS

LBS improperly mixes general and specific jurisdiction concepts while arguing that Giant Eagle has "minimum contacts" in Texas. LBS suggests, for example, that Giant Eagle's investment in Excentus, a corporation with Texas roots, establishes the requisite minimum contacts over Giant Eagle in Texas. LBS Br. 3. Because LBS' patent infringement claim has nothing to do with Excentus, however, Giant Eagle's investment in Excentus cannot give rise to specific jurisdiction. *Beuticontrol Inc. v. Burditt*, 2001 WL 1149360, at 8 (N.D. Tex. Sept. 26, 2001) (specific jurisdiction requires "the cause of action [to] arise[] from the defendant's actions

6

in connection with the state"). ³ LBS likewise suggests that Giant Eagle's gift card sales from earlier periods may establish the requisite minimum contacts. LBS Br. 16. But again, these gift card sales, even if they were not *de minimus*, cannot establish specific jurisdiction because they have nothing to do with Giant Eagle's alleged patent infringement involving its website's store locator.

Nor do these Texas ties establish general jurisdiction over Giant Eagle. Only "substantial, continuous, and systematic" ties to the forum state are sufficient for general jurisdiction. *Jackson v. Tanfuglio Giuseppe S.R.L.*, 615 F.2d 579, 584 (5th Cir. 2010). This test is "difficult . . . to meet" because it requires "extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F. 3d 602, 609 (5th Cir. 2008). Merely investing in a corporation located in the forum state, as Giant Eagle did here, falls far short of the "substantial" and "continuous" ties needed for general jurisdiction. *Central States*, 230 F.3d at 943-44 ("stock ownership alone" not sufficient for personal jurisdiction).

While Giant Eagle may sell a few gift cards to Texas residents, these sales are made through Giant Eagle's website which "is not directed at customers in [the forum state]." *Campbell Pet. Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008). At most, these sales constitute "doing business *with* Texas . . . not doing business *in* Texas." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (emphasis in original). They do not establish the requisite "business presence in the forum state" needed for general jurisdiction. *Irvin v. S, Snow Mfg., Inc.*, 2011 WL 4833047,

---

³ In fact, Giant Eagle has moved to dismiss the Excentus action for lack of personal jurisdiction in Texas. Giant Eagle incorporates its briefs in support of its motion to dismiss filed in the Excentus action, which are attached as Exhibit D.

at *5 (S.D. Miss. Oct. 12, 2011). This is particularly true given that Giant Eagle's gift card sales involving a bill- or ship-to Texas address have been undeniably negligible.[4]

### III. GIANT EAGLE'S WEBSITE DOES NOT PROVIDE A BASIS FOR JURISDICTION OVER IT IN TEXAS

"The federal courts in Texas … have held that more than a web site is required to expose a non-resident to personal jurisdiction [in Texas]." *Fix My PC*, 48 F. Supp. 2d at 642. This is particularly true for Giant Eagle, whose website is a geographic-centric site aimed almost exclusively at its store customers in Pennsylvania, Ohio, West Virginia, and Maryland. Because of this geographic focus, as a practical matter, only gift cards are sold beyond the borders of Giant Eagle's market area. But apart from their *de minimus* nature, these internet sales are "available to all customers throughout the country who have access to the Internet" and, as such, "'the ability of [Texas] residents to access [Giant Eagle's] website[] . . . does not by itself show any persistent course of conduct by [Giant Eagle] in [Texas].'" *Trintec Indus., Inc. v. Pedra Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (quoting *GTE New Media Servs. Inc. v. Bell-South Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000)).

That Giant Eagle's website includes a recipe for "Texas shrimp" does not suggest, as LBS contends, that its website is aimed at Texas residents. Merely including a Texas shrimp recipe does not reveal, as LBS contends, any intent to attract Texas residents to Giant Eagle's website given that many non-Texans also likely have an affinity for that culinary dish. As further proof of this point, Giant Eagle's website includes recipes for food from many states and cities across the United States. *See* Giant Eagle's website recipes attached as Exhibit E. Over

---

[4] As noted in its initial brief, in 2011, Giant Eagle sold less than $40,000 in gift card sales where the transaction involved a Texas address—a mere .0000039 percent of Giant Eagle's annual sales. Giant Eagle Br. 4. LBS' speculation that earlier years would show more sales to a Texas address is unfounded. In 2009, gift card sales involving a Texas address were only $28,050, while, in 2010, they were $46,095. Supp. Aff. ¶2. Thus, Giant Eagle's gift card sales involving a Texas address have been unwaveringly negligible. *Id*.

8

eighty recipes have a geographic designation, starting with "Alaska Surimi Seafood Composed Salas" and ending with "Wisconsin Cheese Chowder." If anything, Texas is under-represented on Giant Eagle's website with many more recipes included from California, Hawaii, Mississippi, New York, the Carolinas and other geographic areas. *Id*. Obviously, these recipes are not directed at Texas and, even if they were, providing information to the public without charge does not involve a jurisdictionally-meaningful act. Thus, the *de minimus* level of interactivity and non-commercial nature of the exchange of information on Giant Eagle's website, which is available to all and not directed to Texas residents, cannot support the exercise of personal jurisdiction over Giant Eagle in Texas.

## IV.     CONCLUSION

Due process, fortunately, does not permit jurisdiction to be based on a few unrelated contacts with a forum state resident (Excentus) that are largely, if not entirely, performed outside the forum state. Nor does due process permit jurisdiction over an out-of-state resident to be based on helpful information provided to the public free of charge on the Internet. Due process also does not permit the exercise of jurisdiction over an out-of-state resident to be based on products purchased outside the forum state merely because their origin may be traced to that state. Accordingly, for the foregoing reasons, this Court should grant Giant Eagle's motion to dismiss for lack of jurisdiction.[5]

---

[5] Giant Eagle also hereby joins in (a) the Reply brief in support of Defendants Starbucks Corporation, Target Corporation, and U.S. Bancorp's motion to dismiss or sever for misjoinder [Dkt. #130]; (b) the Reply brief in support of Defendants Keycorp, Costco Wholesale Corporation, and McDonald's Corporation motion to dismiss for lack of subject matter jurisdiction and insufficient service of process [Dkt. #131], and (c) Defendants Starbucks Corporation, Target Corporation, U.S. Bancorp, and The Kroger Co.'s Notice of Supplemental Authority [Dkt. #147].

Dated: May 18, 2012

Respectfully submitted,

*/s/ Orrin L. Harrison, III*
Orrin L. Harrison, III
Texas Bar No. 09130700
oharrison@akingump.com
Patrick G. O'Brien
Texas Bar No. 24046541
pobrien@akingump.com
AKIN GUMP STRAUSS HAUER & FELD, LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4624
(214) 969-2800 / (214) 969-4343 – Facsimile

Bernard D. Marcus (*pro hac vice*)
Marcus@marcus-shapira.com
Scott D. Livingston (*pro hac vice*)
Livingston@marcus-shapira.com
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
(412) 471-3490

*Counsel for Defendant Giant Eagle, Inc.*

## **CERTIFICATE OF SERVICE**

On May 18, 2012, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the attorneys for all parties registered under ECF who are entitled to notice.

*/s/ Patrick G. O'Brien*